MEMORANDUM **
Edward L. Scarff and two partnerships in which he has an ownership interest, Scarff, Sears & Associates (“SSA”) and Pentoga Partners (“Pentoga”) (collectively “plaintiffs”), appeal the district court’s (1) grant of Intuit, Inc., Computing Resources, Inc. (“CRI”), Kelly Hvengholm, *485 and Lisa Ciccotti’s (collectively “defendants”) Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the plaintiffs’ negligence claim; (2) denial of the plaintiffs’ motion for leave to present “further argument”; and (3) grant of the defendants’ motion for summary judgment on plaintiffs’ fraud and conversion claims.
We affirm the district court’s (1) denial of the plaintiffs’ motion for leave to present “further argument” and (2) grant of the defendants’ motion for summary judgment as to plaintiffs SSA and Pentoga only. We reverse the district court’s (1) grant of the defendants’ Rule 12(b)(6) motion to dismiss the negligence claim; (2) grant of the defendants’ motion for summary judgment as to plaintiff Scarff; and (3) grant of the defendants’ motion for summary judgment as to defendants Intuit and CRI.
1. Negligence Claim
We review claims of error in a district court’s order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo. Hurlic v. S. Cal. Gas Co., 539 F.3d 1024, 1028 (9th Cir.2008).
Under California law, CRI and Intuit owed a duty to audit and review the accounts of SSA and Pentoga if there was sufficient objective indicia of the embezzlement scheme that CRI and Intuit should have been on notice to investigate the SSA and Pentoga accounts. See Sun 'n Sand, Inc. v. United Cal. Bank, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920, 937 (1978).
We find that four facts alleged in the instant complaint, if taken as true, were sufficiently suspicious that a reasonable jury could conclude Intuit and CRI owed a duty to investigate the SSA and Pentoga accounts. First, the plaintiffs allege the defendants knew Scarff owned SSA and Pentoga and that the defendants had Scarffs telephone number. Second, the plaintiffs allege that Hvengholm had told her supervisors that Huang had ordered large salary “adjustments” early in the scheme. Third, the plaintiffs allege that in 1996, Hvengholm left the employ of CRI, but continued to play a major role in the payroll processing for Huang,.and often contacted Ciccotti (who remained at CRI) to provide payroll information for Huang. Fourth, the plaintiffs allege that in 2002, when Huang fled the United States, Hvengholm—still not employed by CRI—arranged to have the SSA and Pen-toga payroll reports sent to her home in Nevada, at least until Scarff learned of the scheme later that year.
A complaint should not be dismissed under Rule 12(b)(6) unless the complaint fails to allege “enough facts to state a claim to relief that is plausible on its face.” Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588-89 (9th Cir.2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). Accordingly, we reverse the district court’s dismissal of the negligence claim.
2. Motion for Leave to Present “Further Argument”
We review claims of error in a district court’s denial of a motion for leave to present “further argument” for abuse of discretion. See Planned Parenthood of S. Ariz. v. Neely, 130 F.3d 400, 402 (9th Cir.1997).
The district court did not abuse its discretion by denying the plaintiffs’ motion for leave to file further argument. “A party opposing summary judgment must direct [the court’s] attention to specific, triable facts. General references without page or line numbers are not sufficiently specific.” S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir.2003) (citations omitted). The district court con- *486 eluded no such facts were raised in the plaintiffs’ opposition to the defendants’ summary judgment motion, and issued an “intended disposition” that stated it intended to grant the motion, but did so only so the parties might have an opportunity to request a stay for settlement negotiations.
On receiving the “intended disposition,” however, the plaintiffs moved for leave to present “further argument,” in which the plaintiffs purported to delineate the specific citations to evidence the district court had found absent from the opposition to summary judgment. The plaintiffs contended they had planned to provide this information during “extensive” oral argument, but the court did not give them sufficient time fully to present this evidence at the hearing. The court correctly noted, however, that “[ojral argument ... is an opportunity for the court to ask questions, often to give counsel a chance to address a particular judge’s tentative conclusions to clarify or even persuade the judge to change his or her mind,” Kennedy v. Lockyer, 379 F.3d 1041, 1058 (9th Cir.2004) (Fisher, J., concurring), and not a chance for a party to respond to major issues unaddressed in its papers. Further, the district court observed that allowing the plaintiffs to present “further argument” would be tantamount to permitting the plaintiffs to file a sur-reply. The plaintiffs offered no equitable reasons for failing to file a complete written opposition to the summary judgment motion.
Given these justifications, the district court did not abuse its discretion by denying the motion to present “further argument.”
3. Summary Judgment
This court reviews claims of error in a district court’s grant of a motion for summary judgment de novo. Ins. Co. of N. Am. v. Fed. Express Corp., 189 F.3d 914, 917 (9th Cir.1999).

A. Lack of Damages

Federal Rule of Civil Procedure 56(e)(2) expressly permits a district court to enter summary judgment against a party who fails to oppose issues raised in a motion for summary judgment, “if appropriate.” Summary judgment is “appropriate” under Rule 56(e)(2) if a motion for summary judgment adequately contends there are no triable issues of fact, and such contention is unopposed. Fed.R.Civ.P. 56(e)(2); cf. Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir.1993).
•[3] Here, the defendants’ summary judgment motion contended the plaintiffs failed to show they were personally damaged. Specifically, the motion contended that Huang had replaced the embezzled funds with funds borrowed from banks which had extended lines of credit in Scarff s name; thus, SSA and Pentoga are already “whole” again. Because SSA and Pentoga failed to respond to this contention with specific evidence they were somehow damaged, under Rule 56(e) the district court correctly granted the defendants’ motion for summary judgment because the plaintiffs cannot prove fraud or conversion without damages. See OCM Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal.App.4th 835, 862 n. 16, 68 Cal.Rptr.3d 828 (2007) (damages required to prove fraud claim); Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal.App.4th 97, 119, 55 Cal.Rptr.3d 621 (2007) (damages required to prove conversion claim).[1]
*487 The district court, however, incorrectly granted the defendants’ summary judgment motion as to Searffs fraud and conversion claims on the ground Searff failed to show specific evidence of damages in response to the motion. Page 5 of the plaintiffs’ memorandum in opposition to summary judgment states:
According to pages 352-369 of Huang’s deposition, the payroll scheme operated as follows ...:
4. ... Huang would ... call Defendant Barber of Wells Fargo Bank, asking her to transfer ‘the payback amount’ from Edward Searff s checking account to a Wells Fargo account in the name of Northeliff, a fictitious corporation.
5. Huang would write a check from the Northeliff account equal to the “payback amount” and deposit them in the SSA and Pentoga accounts.
The cited pages from Huang’s deposition were attached as exhibits to a declaration filed by the defendants in support of their motion for summary judgment. These damages were not waived by judicial admission when plaintiffs’ counsel told the district court “Mr. Searffs money was not used in the payroll scheme” because it is not clear whether counsel intended “Mr. Searffs money” to refer to payroll over-payments to Huang by SSA and Pentoga, or to Huang’s reimbursement of those overpayments from the Northeliff account she had funded with checks surreptitiously drawn on Searffs personal account. See 32 C.J.S. Evidence § 542 (2008) (“Any deliberate, clear, and unequivocal statement, either written or oral, made in the course of a judicial proceeding, qualifies as a judicial admission.”) (emphasis added).

B. Vicarious Liability

As an alternate ground for granting the defendants’ summary judgement motion as to the Intuit and CRI defendants (but not Hvengholm and Ciccotti), the district court held that California law does not permit vicarious liability to attach to an employer or principal if the employee or agent acted outside the scope of his employment, and such was the case here. See Fed. Express Corp., 189 F.3d at 922.
We find, to the contrary, that there is a material question of fact whether Hvengholm and Ciccotti were acting within the scope of their employment when they allegedly aided and abetted, or conspired with, Huang to embezzle funds. On one hand, Hvengholm and Ciccotti were performing their payroll duties by preparing the payrolls for SSA and Pentoga in the amounts directed by the authorized payroll representative for those companies, Huang. By keeping Huang happy—by following her orders as to how many payroll checks to Huang CRI should cut— they were keeping valued customers for CRI and Intuit. On the other hand, it is not clear whether a payroll employer could reasonably foresee that a customer’s payroll representative would bribe its employees to permit the embezzlement of funds; the highly complex nature of the scheme suggests it might not. Further, Hvengholm and Ciccotti were not acting in CRI’s interests—other than to maintain SSA and Pentoga as payroll customers— when they aided and abetted, or conspired with, Huang, but rather in their own; as in Federal Express, they conferred no direct benefit to CRI and Intuit but only opened the employers to liability. See 189 F.3d at 922.
*488 In federal court, summary judgment is incorrectly granted if reasonable factfinders might disagree on a dispositive issue. See Dominguez-Curvy v. Nev. Transp. Dep’t., 424 F.3d 1027, 1041 (9th Cir.2005); see also Kephart v. Genuity, Inc., 136 Cal.App.4th 280, 289, 38 Cal.Rptr.3d 845 (2006) (under California law, whether an employee’s tortious act falls within the scope of his official duties is generally a factual question for a jury). Accordingly, the district court erred in holding that, as a matter of law, Hvengholm and Ciccotti did not act within the scope of their employment when they allegedly aided and abetted, or conspired with, Huang to embezzle funds.
For the reasons discussed above, we AFFIRM in part and REVERSE in part the district court’s orders. Each party shall bear its own costs.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. Because we conclude SSA and Pentoga failed to proffer evidence of damages, and affirm the district court’s order entering summary judgment against SSA and Pentoga on *487 that ground, we do not reach the question whether Pentoga may bring an action as a dissolved partnership under California law.